UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-324-GWU

JEFFERY ALLEN JOHNSON,                                                     PLAINTIFF,

VS.                               **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

        Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.       At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.       If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

    In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Jeffery Allen Johnson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of seizures and an anxiety disorder. (Tr. 12). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Johnson retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 14-17). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 46, high school education, and work experience as a carpenter and butcher could perform any jobs if he were capable of lifting 50 pounds occasionally and 25 pounds frequently and also had the following non-exertional restrictions. He: (1) could not work at unprotected heights or around hazardous machinery or

5

equipment; (2) could have no concentrated exposure to extreme hot or cold temperatures; (3) could not perform any highly stressful work "which will preclude any production rate or quota jobs in which X number of items need to . . . be produced or processed in X period of time;" (4) was limited to no more than simple instructions and occasional changes in work routines or settings; (5) could have no contact with the general public and perform no commercial driving; and (6) could make no more than "frequent" use of his hands for all activities such as reaching, pushing, pulling, and fine and gross manipulation. (Tr. 51-2). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 52).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff had previously applied for Disability Insurance Benefits in 2004, but this application was denied through the level of a ALJ decision issued on December 11, 2006, which became administratively final when it was not further pursued. (Tr. 93-7). This application also concerned a seizure disorder. (Id.). The current application was for SSI only, and was made with a protective filing date of July 15, 2008, meaning that the plaintiff would not be entitled to benefits before then. (Tr. 72-80).

Mr. Johnson alleged disability due to nerve problems, anxiety, seizures, and unexplained weight loss. (Tr. 164). He testified at the hearing before the ALJ that he could not work because of his nerves, which caused him to shake. His treating family physician, Dr. Jackie Maxey, had prescribed a medication called Sinemet, but although he had been taking it for nearly three years he could not tell that it helped. (Tr. 35). Therefore, the physician had recently added another medication, Ativan, and although this had not helped his tremors either, it allowed him to sleep better at night. (Tr. 35-6). Regarding seizures, Mr. Johnson stated that his most recent had been four weeks earlier, during the night, but he also had episodes in the daytime, most recently six weeks earlier. (Tr. 40). He related having injuries from falls because of the seizures, but the specific incidents mentioned were three to nine years earlier, before the period currently under consideration. (Tr. 42-4). He stated that no medical professional had ever witnessed one of his seizures. (Tr. 44). He took the medication Dilantin, which had side effects of reducing his energy level "sometimes," and causing his eyes to hurt if he went in sunlight. (Tr. 48).[1]

The chief issue raised by the plaintiff on appeal is whether the ALJ erred in rejecting the opinion of Dr. Maxey, the treating source. The court concludes that this is a relatively rare case in which the detailed opinion of a treating source was properly rejected.

---

[1] The plaintiff also mentioned nervousness and depression, but does not contest the ALJ's findings on appeal.

Dr. Maxey submitted a functional capacity assessment dated September 16, 2008 which limits the plaintiff to lifting no more than 20 pounds occasionally and 10 pounds frequently, standing and walking a total of two hours in an eight-hour day (no more than 15 minutes without interruption), sitting two hours (no more than 30 minutes without interruption), never climbing stairs or ladders, occasionally twisting, stooping, crouching, having limitations on fingering and feeling in his hands, and needing to avoid concentrated exposure to extreme cold, moderate exposure to noise and fumes, and all exposure to extreme heat, humidity, and hazards. The reasons for the restrictions were cited as an unpredictable seizure disorder, anxiety, and a nervous disorder. The physician also indicated that Mr. Johnson would have to lie down at unpredictable intervals, and that balancing could be a problem due to tremors. (Tr. 262-4).

Subsequently, Dr. Maxey also submitted a "Seizures Residual Functional Capacity Questionnaire" stating that he had seen Mr. Johnson every one to three months for approximately ten years, and his diagnoses were a seizure disorder, tremors, anxiety, and hypertension. He had approximately two seizures per month and three recent seizures were listed. His response to the medications Dilantin and Sinemet was "fair," and he had just started Ativan. Medication side effects were listed, including dizziness, focusing, lethargy, and coordination. He could operate a motor vehicle but not work at heights or with power machinery, and needed to avoid temperature extremes. He had limited use of his hands due to his tremor.

He had memory problems and anxiety, but was capable of low stress jobs, although he was likely to be absent four days a month.  (Tr. 410-13).

The applicable regulations and case law state that the opinion of a treating source must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the case record.  Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).  However, it is "error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." Blakley v. Commissioner of Social Security, 581 F.3d 399, 406 (6th Cir. 2009), quoting Social Security Ruling 96-2p.

In the present case, the evidence does not support Dr. Maxey's opinion.  As previously noted, the plaintiff admitted that no medical professional had ever witnessed a seizure.  In April, 2006, before the relevant period, an emergency room visit resulted after a seizure witnessed by Mr. Johnson's girlfriend and family, but his Dilantin level was found to be subtherapeutic.  (Tr. 252, 254).  At a follow-up visit with Dr. Maxey on May 3, 2006, the physician diagnosed seizures and also noted upper extremity tremors.  (Tr. 232-3).  However, in January, 2007, the plaintiff reported to Dr. Maxey that Sinemet had helped his tremors "a lot."  (Tr. 228).  A CT scan of the head in March, 2007 showed no acute abnormalities.  (Tr. 242).

Laboratory work in 2007 and early 2008 showed Mr. Johnson's Dilantin level to be either in an acceptable range or somewhat high.  (Tr. 238-9, 247).  On May 1, 2007, Dr. Maxey reported that the plaintiff had had no more seizures, and reported no abnormalities on examination.  (Tr. 226-7).

There are no more office notes from Dr. Maxey until December 24, 2008, when the plaintiff was requesting medication refills and reporting no more seizure activity.  (Tr. 328).  No specific abnormalities were noted, and a Dilantin level obtained the next month was normal.  (Tr. 329, 346).  There is another gap in the office notes until September 21, 2009, when Mr. Johnson stated that he wanted to discuss nerve problems and needed to have a paper filled out.  (Tr. 417).  There is a notation regarding tremors which is essentially illegible.[2]  Mr. Johnson did clearly report, however, no syncope or pre-syncope.  (Id.).  No examination abnormalities are clearly noted.  (Tr. 418).  Dr. Maxey's standard form contains listings of body parts, with the indication that the physician should place a checkmark "if normal," and to circle the items which were abnormal.  Most items are checked as normal, while the areas that would presumably involve tremors, the extremities and the neurological areas, were neither checked or circled.  In any case, Dr. Maxey diagnosed tremors and anxiety, and added Ativan, and advised continuing Sinemet.

---

[2] It is unclear whether Dr. Maxey was writing that the patient had "some" tremors. This is recorded in a section of his notes in which he recorded the patient's history so it would not clearly represent an observation.  (Tr. 417).

(Id.). Nothing is said about seizures although he signed the previously mentioned seizure RFC form the same day.

Under the circumstances, the ALJ was justified in finding Dr. Maxey's functional opinions to be negated by the absence of findings in his treatment notes. (Tr. 15). There is no evidence that the plaintiff saw Dr. Maxey with the frequency both he and the physician describe; if so, there are a great many office notes missing. Nor are there any reports of seizures to the physician during the period relevant to this application. Regarding tremors, the evidence is almost equally weak, but the ALJ gave the plaintiff the benefit of the doubt in placing limits on the use of his hands. In this regard, the plaintiff's testimony of his daily activities does not indicate that the problem with tremors or medication side effects would preclude all activity. Mr. Johnson testified that he did drive at times, and had driven as far as 50 miles. (Tr. 29-30). He stated he helped his father, who lived nearby, with his farm, and fed the chickens pretty much every day. In the past, he had also fed cattle and helped with fencing. (Tr. 36-7). He would accompany his father on visits to town or to stock sales and would drive his father's riding mower between their respective residences, although his girlfriend would actually mow his grass. (Tr. 50). He participated in household chores such as washing dishes, doing laundry, and carrying a clothes basket. (Id.).

The only other evidence regarding functional restrictions from a medical source was from a non-examining reviewer, Dr. Robert K. Brown, who reviewed the

evidence as of January, 2009. He felt that the only limitation needed was to avoid all exposure to hazards. (Tr. 319-24). The ALJ gave the plaintiff the benefit of the doubt in adopting many of Dr. Maxey's restrictions, although he did not accept the limitations on lifting, walking, standing, sitting, and postural activities, which do not have any clear basis in either the medical reports or the plaintiff's self-described daily activities. This conclusion is supported by substantial evidence.

The only other issue raised by the plaintiff on appeal is that the ALJ did not properly evaluate his allegations of pain. The brief does not state which pain symptoms the ALJ did not properly evaluate. The plaintiff described his problems, as previously mentioned, as primarily being nervousness, shaking, and seizures. He did describe frequent headaches in his testimony, unrelated to seizures, but it does not appear that he ever complained of them to a medical source, and Dr. Maxey's most recent office note appears to indicate that he was having no headaches. (Tr. 417). Consequently, this allegation of error is without merit.

The decision will be affirmed.

This the 29th day of September, 2011.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**